1              IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF SOUTH CAROLINA
2                      CHARLESTON DIVISION

3

UNITES STATES OF AMERICA        :
4                                :
        vs.                      :
5                                :
MATTHEW RASHAUN JONES            :      2:16 CR 122
6

7

8

        Plea in the above-captioned matter held on Tuesday,
9

January 17, 2017, commencing at 10:29 a.m., before the
10

Honorable David C. Norton, in Courtroom II, United States
11

Courthouse, 83 Meeting St., Charleston, South Carolina,
12

29401.
13

14

15

APPEARANCES:
16
                TAMEAKA A. LEGETTE, ESQ., 14th Circuit
17              Solicitor's Office, P.O. Box 366, Walterboro,
                SC, appeared for the Government.
18
                THOMAS G. NESSLER, JR., ESQ., 1456 Southwood Dr.,
19              Surfside Beach, SC, appeared for defendant.

20

21

22

23        REPORTED BY DEBRA L. POTOCKI, RMR, RDR, CRR
                      P.O. Box 835
24                 Charleston, SC  29402
                      843-579-2600
25

1          MS. LEGETTE:  Morning, Your Honor, Tameaka Legette

2     for the Government.  United States calls United States of

3     America versus Matthew Rashaun Jones.  We're before the Court

4     in Criminal No. 2:16-CR-122.  Your Honor, we're here for a

5     change of plea for Mr. Matthew Jones pursuant to a plea

6     agreement.

7          Pursuant to this plea agreement, Your Honor, Mr. Jones

8     will be pleading guilty to count one of the indictment, which

9     is conspiracy to participate in a pattern of racketeering

10    activity in violation of 18 U.S.C. Section 1962(d).

11          THE COURT:  Be sworn for me, please, sir.

12         (Defendant sworn.)

13          THE COURT:  Mr. Jones, it's my understanding that you

14    wish to change the plea you previously entered to a plea of

15    guilty to count one of this indictment.  Is that correct?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Okay.  Now, before I accept your plea,

18    there are a number of questions I'm going to ask you to make

19    sure it's a valid plea.  If you don't understand any questions

20    or need to talk to your lawyer at any time, you let me know,

21    okay?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  The reason that's important, now that

24    you've been sworn, your answers to my questions will be

25    subject to penalties of perjury or lying under oath.  Do you

1    understand that?

2             THE DEFENDANT:  Yes, sir.

3             THE COURT:  Now, Mr. Jones, how old are you?

4             THE DEFENDANT:  Twenty-three.

5             THE COURT:  How far did you go in school?

6             THE DEFENDANT:  Ninth grade.

7             THE COURT:  Have you taken any drug or any medication

8    or consumed any alcoholic beverages in the last 24 hours?

9             THE DEFENDANT:  No, sir.

10             THE COURT:  Have you ever been treated for drug

11    addiction or mental illness?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  When was that?

14             THE DEFENDANT:  When I was on probation back in 2013.

15             THE COURT:  Um-hum.

16             THE DEFENDANT:  I was on drug and alcohol program.

17             THE COURT:  Outpatient.  You weren't in a hospital.

18             THE DEFENDANT:  No, sir.

19             THE COURT:  Okay.  Do you understand what's happening

20    here this morning?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Can you tell me in your own words, why

23    are you here this morning?

24             THE DEFENDANT:  To plead guilty.

25             THE COURT:  Do you have any doubt as to Mr. Jones'

1    competence to enter a plea here this morning, Mr. Nessler?

2              MR. NESSLER:  None, Your Honor.

3              THE COURT:  It appears to me you are competent to

4    plead to these charges, and I so find for the purposes of the

5    record.  Have you had plenty of time to discuss your case with

6    your lawyer?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Are you satisfied with the job he's done

9    for you?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Has he done everything you asked him to

12   do?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Has he failed to do anything you asked

15   him to do?

16             THE DEFENDANT:  (Shakes head negatively.)

17             THE COURT:  You have to answer out loud.

18             THE DEFENDANT:  No, sir.

19             THE COURT:  Okay.  You understand under the

20   constitution and laws of the United States, you're entitled to

21   a jury trial on these charges?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  You also understand that if you wanted a

24   jury trial, you'd have the right to the assistance of your

25   lawyer for your defense on the charges contained in the

1    indictment 16-122.

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  You also understand that if you wanted a

4    jury trial, at your trial you'd be presumed to be innocent,

5    and the Government's required to prove you guilty by competent

6    evidence and beyond a reasonable doubt before a jury could

7    find you guilty.

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  You also understand if you want a jury

10   trial, you would not have to prove that you were innocent at

11   your trial.

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  You also understand that if you wanted a

14   jury trial, in the course of your trial the witnesses for the

15   Government would come into court and they would testify in

16   your presence, and your lawyer could cross-examine the

17   Government's witnesses, object to the Government's evidence

18   and offer evidence in your defense?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  Do you also understand if you wanted a

21   jury trial, you'd have the right to testify to the jury if you

22   wanted to?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  You also understand you have a

25   constitutional right not to testify if you don't want to?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  You also understand that if you chose not

3    to testify at your trial, the jury could not think that you

4    were guilty based on the fact that you had exercised your

5    constitutional right not to testify at your trial?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  You also understand that if you wanted a

8    jury trial, you'd have the right to issuance of subpoenas to

9    compel the attendance of witnesses to testify in your defense?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Now, if you plead guilty here this

12    morning and I accept this plea, you understand you're going to

13    waive your right to a jury trial, the other rights we've just

14    discussed, there's not going to be a jury trial, and I'm going

15    to sentence you on the basis of this guilty plea, after I

16    consider your presentence report.

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Also, if you plead guilty, you're going

19    to waive your right not to incriminate yourself, since I'm

20    going to ask you some questions about what you did, in order

21    to satisfy myself that you're guilty, and you'll have to

22    acknowledge you're guilty of these charges.

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  You also understand what you're pleading

25    guilty to is a felony, and as such, you could lose some of

1    your valuable civil rights, such as the right to vote or the

2    right to possess any firearm or bullet.

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Any restitution in this case?

5              MS. LEGETTE:  None, Your Honor, that we're aware of

6    at this time.

7              THE COURT:  Having discussed your rights with you,

8    Mr. Jones, do you still want to plead guilty?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Okay.  Have you received a copy of the

11   indictment, that is, the written charges made against you in

12   this case?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Have you had plenty of time to go over

15   the indictment and all the other paperwork that the

16   Government's given your lawyer?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Okay.  You're pleading guilty to count

19   one of the indictment, which charges conspiracy to participate

20   in a pattern of racketeering activity in violation of Title 18

21   United States Code Section 1962(d).  If you went to trial on

22   this charge, you understand the Government would have to prove

23   the following beyond a reasonable doubt.

24        From at least 2009 until February 2016, here in South

25   Carolina, you, and others, being persons employed by and

1    associated with the Cowboys, which is an enterprise engaged in

2    and the activities of which affected interstate and foreign

3    commerce, together with persons known and unknown to the grand

4    jury, did knowingly and intentionally combine, conspire,

5    confederate and agree with one another to violate Title 18

6    United States Code Section 1962(c), that is, to conduct and

7    participate, directly and indirectly, in the conduct of the

8    affairs of the enterprise through a pattern of racketeering

9    activity, as defined in Title 18 United States Code Section

10   1961(1) and (5), consisting of acts of murder, robbery and

11   narcotics trafficking.

12       It was further a part of the conspiracy that each

13   defendant, including you, agreed that a conspirator would

14   commit at least two acts of racketeering activity in the

15   conduct of the affairs of the enterprise and to effect the

16   objects thereof.  You and your co-conspirators committed and

17   caused to be committed overt acts as outlined in the

18   indictment, in the District of South Carolina and elsewhere,

19   all in violation of Title 18 United States Code Section

20   1962(d).

21       Mr. Jones, you understand the charge against you?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  You understand the Government would have

24   to prove each and every element of that charge beyond a

25   reasonable doubt before a jury could find you guilty of that

1    charge?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  The Court finds Mr. Jones fully

4    comprehends and understands the nature of the charges against

5    him and generally what elements the Government would have to

6    prove if we had a trial.

7        Do you understand, Mr. Jones, that the maximum possible

8    penalty is 20 years in jail, $250,000 fine, five years

9    supervised release and special assessment of $100?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  Okay.  Now, have you and your lawyer

12   talked about the Sentencing Guidelines?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  You talked about how the Sentencing

15   Guidelines might be applied in your case?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  You understand that nobody is going to be

18   able to determine the guidelines sentence for your case until

19   after your presentence report has been completed, and you and

20   the Government have had an opportunity to challenge the

21   probation officer's report?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  You also understand that after your

24   initial guidelines range has been determined, I have the

25   authority at sentencing, under some circumstances, to depart

1    from those guidelines or to vary from those guidelines, either

2    above those guidelines or below those guidelines?

3                THE DEFENDANT:  Yes, sir.

4                THE COURT:  You also understand, at sentencing, I'll

5    examine the factors in 18 United States Code 3553(a), which

6    could result in a sentence either above your guidelines or

7    below your guidelines?

8                THE DEFENDANT:  Yes, sir.

9                THE COURT:  Do you understand under some

10   circumstances you or Government may have the right to appeal

11   any sentence I might impose?

12               THE DEFENDANT:  Yes, sir.

13               THE COURT:  You also understand that parole has been

14   abolished in the federal system; if you're sentenced to

15   prison, you'll not be released on parole.

16               THE DEFENDANT:  Yes, sir.

17               THE COURT:  Okay.  Do you also understand if the

18   sentence is more severe than you expect it to be, you're still

19   bound by this guilty plea and you have no right to withdraw

20   it?

21               THE DEFENDANT:  Yes, sir.

22               THE COURT:  Okay.  You also understand if you plead

23   guilty, the law requires you serve a term of supervised

24   release.

25               THE DEFENDANT:  Yes, sir.

1          THE COURT:  When you're on supervised release, you're

2     restricted to places you can go and the things you can do, and

3     you have to report to authorities on a regular basis.

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Kind of like being on bond, okay?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Okay.  In your case a term of supervised

8     release is maximum five years.  Do you understand that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Do you also understand if you're on

11     supervised release and you violate a condition of your

12     supervised release, you can be brought back into court, and if

13     it's proved by a preponderance of the evidence that you did

14     violate a condition of your supervised release, you can be

15     sent back to jail for the entire term of your supervised

16     release?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Has anyone threatened you or threatened

19     anyone else or forced you in any way to plead guilty here this

20     morning?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  Summarize the plea agreement for me, Miss

23     Legette.

24          MS. LEGETTE:  Thank you, Your Honor.  The plea

25     agreement is summarized as follows.  Page one, paragraph one.

1    The defendant has agreed to plead guilty to count one of the

2    indictment, conspiracy to participate in a pattern of

3    racketeering activity, in violation of Title 18 United States

4    Code Section 1962(d).

5        Page two, paragraph two.  The Government makes the

6    following agreement regarding sentencing.  If the defendant,

7    Mr. Jones, makes full and complete disclosure to the U.S.

8    probation office, and demonstrates an acceptance of

9    responsibility for his offense, up to and including the time

10   of sentencing, the Government will recommend a two level

11   reduction in the applicable Sentencing Guidelines.  And if the

12   defendant has an offense level of 16 or more, the United

13   States will also, at that time, recommend an additional one

14   level reduction in applicable Sentencing Guidelines.

15       Paragraph -- subsection (b), page two, restitution.  The

16   defendant agrees to make restitution in this case to any of

17   the victims in the counts listed in the indictment, in an

18   amount to be determined by the Court at the time of

19   sentencing.  At this time, however, the Government is not

20   aware of any restitution related to Mr. Jones' conduct.

21       Page three, paragraph three, pursuant to Federal Rule of

22   Criminal Procedure 11(c)(1)(A), the United States will dismiss

23   counts four and five at the time of sentencing, which are

24   respectively attempted murder and firearms charges.

25           THE COURT:  Got any state charges in this case?

1              MS. LEGETTE:  He does, and those will also be

2    dismissed at the time of sentencing.

3              THE COURT:  Thank you.

4              MS. LEGETTE:  Yes, Your Honor.

5         Page three, paragraph four, waiver of defenses and appeal

6    rights.  The defendant is aware 18 U.S.C. 3742 and 28 U.S.C.

7    2255 afford every defendant certain rights to contest a

8    conviction and/or sentence.  Acknowledging these rights, the

9    defendant, in exchange for the concessions made by the

10   Government in this plea agreement, except for a sentence that

11   is above the advisory guideline range, waives the right to

12   contest either the conviction or the sentence in any direct

13   appeal or other postconviction action, including any

14   proceedings under 28 U.S.C. 2255.

15        This waiver does not apply, however, to changes in the

16   law, claims of ineffective assistance of counsel or

17   prosecutorial misconduct raised pursuant to 28 U.S.C. 2255.

18        Page three, paragraph five.  The defendant agrees to

19   provide detailed financial information to the United States

20   probation office prior to sentencing.  He understands and

21   agrees that any monetary penalties are due immediately and are

22   subject to enforcement by the United States.  Additionally, he

23   also understands that payments made can not be discharged in

24   bankruptcy.

25        Subsection (a), special assessments.  The defendant also

1    must pay a special assessment of $100 for each felony count

2    which he is convicted for.

3        Subsection (b), restitution.  The defendant agrees to make

4    full restitution under 18 U.S.C. 3556 in an amount to be

5    determined by the Court at the time of sentencing.

6        Subsection (c), fines.  The defendant also understands the

7    Court may impose a fine pursuant to 18 U.S.C. 3571 and 3572.

8        Page four, paragraph six.  The defendant also understands

9    that sentencing is within the sole discretion of the Court.

10   Additionally, he also understands that his sentence in this

11   matter has not yet been determined by the Court, and any

12   estimate of a probable sentencing range given to him at this

13   point, Your Honor, is only a prediction and not a promise.

14       Page five, subsection -- page five, paragraph seven.  The

15   defendant also agrees that all facts that determine his

16   offense level under the guidelines can be found by the Court

17   at sentencing by a preponderance of the evidence standard.

18   And that the Court may also consider any reliable evidence,

19   including hearsay.

20       Page five, paragraph eight.  The defendant also

21   understands that the obligations of the Government within the

22   plea agreement are expressly contingent upon his abiding by

23   federal and state laws.

24       Page five, paragraph nine.  In the event that Mr. Jones,

25   the defendant, fails to comply with any of the provisions of

1    his agreement, his plea agreement, the Government will have

2    the right, at its sole discretion, to void all of its

3    obligations under this plea agreement, and the defendant will

4    not have any right to withdraw his plea for the offense

5    enumerated herein.

6        Page five, paragraph ten.  The defendant also, at this

7    point, has various trial rights.  And he represents to this

8    Court that he has met with his attorney for a sufficient

9    number of times for a sufficient period of time, and that he

10   is hereby waiving those pretrial rights, as well as trial

11   rights, and that he has met with his attorney for a sufficient

12   amount of time.

13       And he's also waiving these rights knowingly and

14   voluntarily.

15       Page six, paragraph 11.  The parties hereby agree that

16   this plea agreement contains the entire agreement of the

17   parties.

18            THE COURT:  Mr. Jones, are those the terms of your

19   plea agreement as you understand them, sir?

20            THE DEFENDANT:  Yes, sir.

21            THE COURT:  And this is your signature on the last

22   page of your plea agreement?

23            THE DEFENDANT:  Yes, sir.

24            THE COURT:  And before you signed it did you have

25   plenty of time to go over it with your lawyer?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And before you signed it did you

3     understand what you've agreed to do and what the Government's

4     agreed to do in return?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Okay.  Has anyone made you any promise

7     other than your plea agreement to induce you to plead guilty?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Has anyone made any prediction, prophecy

10    or promise as to what your sentence is going to be?

11         THE DEFENDANT:  No, sir.

12         THE COURT:  We have a factual basis somewhere.

13         MS. LEGETTE:  We do, Your Honor, and it has not yet

14    been stipulated to.  We're going to read it into the record

15    instead.

16         THE COURT:  All right, fine.

17         MS. LEGETTE:  Your Honor, at this point if this

18    matter had proceeded to trial, the Government will prove or

19    will have proven the following facts beyond a reasonable

20    doubt.

21       The parties agree that these facts do not encompass all of

22    the facts that would have been proven at trial, had the matter

23    proceeded to trial.

24       The Cowboys are a violent street gang with members based

25    in the Brittle Bank area east side of Walterboro, South

1    Carolina.

2        The Cowboys do not have a formal hierarchy or defined dues

3    payment structure.  Membership in the Cowboys is based on

4    neighborhood friendships.  There is no formal jump in process

5    and no probationary period for acceptance.

6        Members of the Cowboys commit crimes on behalf of the gang

7    to increase their status within the gang.  Members of the

8    Cowboys have authority within the gang to order and to commit

9    crimes on behalf of the gang.

10       The outcome of the crimes are reported to the leader of

11   the Cowboys.  Failure to commit any crime on behalf of the

12   Cowboys can result in discipline, including violence, threats

13   of violence, physical beatings or death.

14       Members of the Cowboys maintain allegiance to and

15   discipline within the gang.  Members of the Cowboys who choose

16   to distance themselves are subject to discipline from other

17   members.  This discipline can include violence against a

18   member or family member, threats of violence against a member

19   or family member, physical beatings or death.

20       Members of the Cowboys show their allegiance by wearing

21   clothing in the colors of red, white and blue.  Clothing

22   items, including shirts, pants and hats are worn in these

23   colors.  Members carry rags, also known as flags, in these

24   colors, including depictions of the American flag.

25       Members of the Cowboys greet each other and show their

1    membership the gang using a set of hand signs intended to

2    evoke the shape of a B.  This hand sign also shows an

3    affiliation with the Bloods gang.  Members of the Cowboys also

4    show allegiance to the gang by having the words Cowboys or GMC

5    tattooed on some part of their body.  Members of the Cowboys

6    communicate with each other and associates who are located

7    across the United States through the use of a telephone and

8    social networking websites.  Photographs posted on social

9    networking sites depict firearms, large amounts of cash, and

10   what purports to be powder cocaine and crack cocaine.

11       Members of the Cowboys display threats to members of rival

12   gangs, threats to police, and the means by which members

13   commit crimes on behalf of the gang, as well as profits, by

14   posting videos on YouTube.  These videos depict members and

15   associates of the Cowboys using lyrics, while dressed in

16   colors and displaying hand signs associated with the gang,

17   conveying threats to rival gang members, making statements

18   about law enforcement and individuals who have made reports to

19   law enforcement and how members make money.

20       These videos also depict various members of the Cowboys

21   displaying firearms, large amounts of U.S. currency and what

22   purports to be narcotics.  Members and associates of the

23   Cowboys were expected to defend each other from rival gangs,

24   and to attack rival gang members with whom the Cowboys are in

25   an ongoing dispute.

1    The Cowboys gang, during the time frame set forth in the

2    indictment, were aligned with members and associates of

3    another street level criminal organization called the Wild

4    Boys.  The Wild Boys operated out of the Green Pond area of

5    Walterboro, South Carolina.  The Wild Boys, known to wear

6    light green or camouflage, also use light green rags or flags

7    to show allegiance to and represent the gang.

8    Wild Boys also use hand signs depicting a W to show

9    membership and allegiance in the gang.  The Cowboys also

10   shared common interests with the Wild Boys, including the

11   production of rap music posted on YouTube which depicted large

12   amounts of U.S. currency, firearms, and what purports to be

13   narcotics.

14   The groups also shared common enemies, to include members

15   and associates of the Dooley Hill gang and the Go Boys.

16   Members and associates of the Cowboys have, including but was

17   not limited to Khiry Broughton, a/k/a Kblacka; Dashawn Trevell

18   Brown, a/k/a Shawny; Clyde Naquan Hampton, a/k/a One Loyal

19   Shooter; Zaquann Ernest Hampton, a/k/a TOB; Matthew Rashaun

20   Jones, a/k/a Boogie Mac; Christopher Shawn Brown, a/k/a

21   Roughish, or Roguy; Bryant Jameek Davis, a/k/a Savo; William

22   Lamont Cox, a/k/a Wataz; and Quintin John Fishburne.

23   Beginning on a date unknown to the grand jury, but at

24   least in 2009 and continuing to the date of the indictment in

25   this matter, the defendant and his co-conspirators, including

1    individuals listed above, were each a person employed by and

2    associated with the Cowboys, an enterprise engaged in and the

3    activities of which affected interstate and foreign commerce,

4    together with persons known and unknown to the grand jury, did

5    knowingly and intentionally combine, conspire, confederate and

6    agree with one another to violate Title 18 United States Code

7    Section 1962(c), that is, to conduct and participate directly

8    and indirectly in the conduct of the actions of the enterprise

9    through a pattern of racketeering activity as defined in Title

10   18 United States Code Sections 1961(1) through (5).

11       That racketeering activity consisted of, among other

12   things, multiple acts of murder, attempted murder and robbery,

13   among other things.

14       The defendant, Matthew Rashaun Jones, was a trusted member

15   of the Cowboys.  Among the acts the defendant committed or

16   agreed that others would commit on behalf of the Cowboys on or

17   about May 12, 2011, the defendant participated in a drive-by

18   shooting.  At the time, an associate of the Cowboys was

19   driving a vehicle and he had two passengers, Matthew Rashaun

20   Jones and Deshawn Trevell Brown.

21       Specifically, on or about May 12, 2011, in the 3000 block

22   of Robertson Boulevard in Walterboro, South Carolina, the

23   associate of the Cowboys drove his vehicle next to a vehicle

24   driven by an associate of a rival gang of the Cowboys.  From

25   the vehicle, Matthew Rashaun Jones and Deshawn Trevell Brown

then fired multiple shots at the associate of the rival gang.
The associate of the rival gang was not injured.

Further, on or about May 30, 2013, in Walterboro, South
Carolina, Matthew Rashaun Jones participated in a drive-by
shooting.  At the time, Clyde Naquan Hampton was driving a
vehicle, and he had two passengers, Matthew Rashaun Jones and
Christopher Dashawn Brown.

Specifically on May 13, Clyde Hampton drove the vehicle
past 62 Jared Road, Walterboro, South Carolina, a residence in
the Dooley Hill area where suspected members of the Dooley
Hill gang, a rival of the Cowboys, were believed to reside.

As Clyde Naquan Hampton drove past the home, Matthew
Rashaun Jones and Christopher Brown fired multiple shots at
the residence.  No individuals were injured.

During the time of the conspiracy, members of the Cowboys
were involved in robberies, attempted murder and narcotics
trafficking.  Robberies committed by members of the Cowboys
targeted, in part, businesses where cash could be obtained.
These robberies, as well as the communications via social
networking and YouTube, were activities that affected
interstate commerce.

Thank you, Your Honor.

THE COURT:  Thank you.  Mr. Jones?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you agree with the prosecutor's

1    summary of your involvement with the Cowboys in these drive-by

2    shootings?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Yeah?  Yes, sir?

5              MR. NESSLER:  Your Honor, as to the facts, the two --

6    he admits to the two drive-by shootings, that he was a

7    Cowboy -- Show him -- he does have tattoos and he was a member

8    of a criminal gang.  But I haven't had a case in 40 years

9    where I agreed 100 percent with all of the

10   Government's summary.

11             THE COURT:  You would agree with the prosecutor's

12   summary with regard to what they purport to be able to prove

13   at trial with regard to your client's participation in the

14   Cowboys and the RICO racketeering activity?

15             MR. NESSLER:  Absolutely, yes, Your Honor.

16             THE COURT:  You agree that if the prosecutor's

17   summary of Government's evidence was believed by the jury,

18   that your client, it would satisfy each and every element of

19   the charge your client's pleading guilty to?

20             MR. NESSLER:  That's correct, Your Honor.

21             THE COURT:  It's the finding of the Court in the case

22   of United States of America versus Matthew Rashaun Jones, that

23   Mr. Jones is fully competent and capable of entering an

24   informed plea, that his plea of guilty is a knowing and

25   voluntary plea, supported by an independent basis in fact,

1    containing each of the essential elements of the offense.  His

2    plea is now accepted, and he's now adjudged guilty of that

3    offense.

4        Please sign this for me, Mr. Jones.

5        THE CLERK:  May it please the Court.  The defendant,

6    Matthew Rashaun Jones, having withdrawn his plea of not guilty

7    entered February 25, 2016, pleads guilty to count one of the

8    indictment after arraignment in open court.  Signed defendant,

9    Matthew Jones, January 17, 2017.

10        THE COURT:  Mr. Jones, what's going to happen now is

11   the probation office is going to prepare a presentence report,

12   probably interview you with regard to the report.  They'll

13   send it to your lawyer, your lawyer will bring it to you, you

14   can go over it, make any objections or corrections you need

15   for the report.  Those things will be reflected in an amended

16   report.  And when that's done, we'll get together for

17   sentencing, okay?  Understand?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  Okay.  Anything else, Mr. Nessler?

20        MR. NESSLER:  Nothing.

21        THE COURT:  Thank you very much.

22

23     (Court adjourned at 10:54)

24

25

<u>REPORTER'S CERTIFICATION</u>

I, Debra L. Potocki, RMR, RDR, CRR, Official Court Reporter for the United States District Court for the District of South Carolina, hereby certify that the foregoing is a true and correct transcript of the stenographically recorded above proceedings.


S/Debra L. Potocki
_____

Debra L. Potocki, RMR, RDR, CRR